BUCHHOLZ, by guardian *ad litem,* Appellant, vs. BREIT-
BACH, imp., Respondent.

*March 8—June 20, 1927.*

*Automobiles: Dealer's license plates: Presumption of ownership of
car: Unlawful use of plates: Farmer selling cars for dealer:
Employee or independent contractor: Evidence: Sufficiency.*

1. The presumption that one operating an automobile upon which
   is affixed a license issued to a dealer under sec. 85.05, Stats.,
   was an employee of the dealer and within the scope of his
   employment, so as to make the dealer liable for injuries due
   to negligence of the driver of the car, is rebuttable, and if
   completely overcome there is no jury issue. p. 228.
2. In a personal injury action the violation of the statute by an
   automobile dealer by allowing another to use the license plates
   issued to him as a dealer does not preclude him from assert-
   ing that the relationship between him and the driver was
   other than that of employer and employee. p. 228.
3. A truck farmer, in an attempt to negotiate an automobile trade
   between a dealer, who was his former employer, and a third
   person, was an independent contractor as a matter of law, for
   whose negligence the dealer was not liable, although the auto-
   mobile, which was owned and driven by himself, bore license
   plates issued to the dealer; an independent contractor being
   one employed to perform work but free from the employer's
   control as to the manner of doing it. pp. 229–231.

APPEAL from a judgment of the circuit court for Milwaukee county: CHARLES L. AARONS, Circuit Judge.  *Affirmed.*

The defendant *Breitbach,* in the year 1923, was engaged in selling Buick automobiles in Milwaukee county, his principal place of business being in the city of South Milwaukee, and he was also engaged in like business in the cities of West Allis and Wauwatosa.  In January of that year the defendant Kastner became a salesman for *Breitbach* and had a drawing account, which was offset by commissions earned. This relationship continued until July 31, 1923, at which time Kastner's account, while overdrawn, was voluntarily credited by the defendant *Breitbach,* and balanced.  Kastner also, in July, 1923, moved onto a truck farm, which he operated during the farming season of that year; and in the latter part of August of the same year he purchased a Revere car, which he drove at the time of the accident.  The evidence also discloses that while operating the farm Kastner also occasionally attempted to sell automobiles.

At the beginning of 1923, under the provisions of sec. 85.05 of the Statutes, the defendant *Breitbach,* instead of registering each motor vehicle owned by him, made application to the secretary of state for a general distinguishing number or mark, and after paying the fee required by the statute obtained a certain license plate, which he delivered to the defendant Kastner, and which was retained by him and used on his car up to and including the date of the accident herein complained of.  On the 26th day of October of the same year the infant plaintiff sustained injuries while Kastner operated his car under the circumstances hereinafter disclosed.

One Miller was the owner of a Ford runabout, and was desirous of exchanging the same for another car, and in coming in contact with the defendant Kastner the latter suggested that he would take him to *Breitbach's* place of business

in the city of West Allis to there exhibit to him the cars that were owned by *Breitbach* and on the market for sale. On the afternoon of October 26th Kastner drove Miller to *Breitbach's* garage in the city of West Allis, in his Revere car, and while at that place Miller became interested in a certain Hudson car located in the garage which was then undergoing some repair. Miller intended to exchange his Ford runabout for the Hudson car, so they waited at the garage for *Breitbach* for a period of two hours, and, the latter not appearing, Kastner drove Miller back to his home and then returned to his own home. A short time thereafter Kastner, with the intention of either calling for a young girl or of driving his car back to the garage at West Allis for the purpose of negotiating a possible exchange, collided with the infant plaintiff, from which collision the latter sustained the injuries herein complained of. After the collision Kastner telephoned to *Breitbach* and notified him of the accident, and on the following morning met *Breitbach* at his place of business and informed him in detail of what had happened.

The case was submitted to the jury upon a special verdict, in which the issues of negligence, proximate cause, and contributory negligence were all found in favor of the plaintiff. The jury answered the first three questions of the special verdict as follows:

"(1) That the dealer's license plates which were carried on defendant Kastner's automobile at the time of the collision were so carried at that time with the knowledge and consent of the defendant *George Breitbach*.

"(2) That the defendant Kastner was an automobile salesman in the employ of the defendant *Breitbach* at the time of the collision.

"(3) That the defendant Kastner, while driving his automobile at the time of the collision, acted within the scope of his employment as an automobile salesman for the defendant *George Breitbach*."

At the close of the evidence counsel for both parties moved for a directed verdict, but notwithstanding such motions the

court concluded to submit the issues in the case to the jury on the special verdict. After the return of the special verdict and upon the usual motions made by both counsel, the court ordered that the plaintiff's complaint be dismissed as to the defendant *Breitbach,* notwithstanding the verdict; and judgment in accordance with the court's order having been duly entered, plaintiff has prosecuted this appeal.

Further facts will appear in the opinion.

For the appellant there was a brief by *Walter Schinz, Jr.,* and *Glicksman & Gold,* attorneys, and *Ray T. McCann,* of counsel, all of Milwaukee, and oral argument by *Mr. McCann* and *Mr. Walter L. Gold.*

For the respondent there was a brief by *Shaw, Muskat & Sullivan* of Milwaukee, and oral argument by *William T. Sullivan.*

The following opinion was filed April 5, 1927:

DOERFLER, J. The special verdict returned by the jury, if supported by any credible evidence, fastens liability upon both defendants. Under the answer of the jury to the first question of the special verdict, the license plates on the car of the defendant Kastner at the time of the accident were used by Kastner with the knowledge and consent of the defendant *Breitbach,* and there is credible evidence in the case to sustain this finding. It must also be conceded that in consenting to the use of these license plates by the defendant Kastner, the defendant *Breitbach* violated the provisions of the statute. Under these circumstances, plaintiff's counsel argue that a presumption or inference is raised that at the time of the accident Kastner was operating the automobile as an employee of the defendant *Breitbach* and within the scope of his employment.

In the case of *Enea v. Pfister,* 180 Wis. 329, 192 N. W. 1018, it was held that where a person is injured by an automobile owned by the defendant but driven by another, "proof of ownership makes out a *prima facie* case, as it

raises an inference or justifies a presumption that the driver was the servant of the owner, driving the car in pursuit of the owner's business and within the scope of his employment."

Such presumption or inference is not conclusive, and where it is fully overcome by the evidence in the case there is no jury issue, but such issue becomes one of law, to be determined by the court. It is said in the opinion in the *Pfister Case:*

"While the evidence on the part of a defendant may be so clear and convincing as to overcome the probative force of the inference justified by the fact of ownership, the evidence on behalf of the defendant in this case is not of that order and the finding should not have been disturbed by the trial court."

A reading of the *Pfister Case* is persuasive that the proof offered by the defendant was weak and unsatisfactory, and under those circumstances this court held that the inference had not been overcome, but that the evidence properly raised a jury issue. See, also, *Johnson v. Ætna Life Ins. Co,* 158 Wis. 56, 147 N. W. 32, and numerous cases cited in 42 A. L. R. 905.

It is further argued by plaintiff's counsel that inasmuch as the defendant *Breitbach* permitted Kastner to use the license plates under such circumstances as amounted to a violation of the statute above referred to, he should not be permitted to assert that the relationship between him and Kastner was other than that of employer and employee and that Kastner was not acting within the scope of his employment. This may be the law in some jurisdictions, but it is clearly not so in Wisconsin. In *Derr v. C., M. & St. P. R. Co.* 163 Wis. 234, 157 N. W. 753, it was held:

"The fact that an automobile which was struck by a train had not been registered for the current year and was being driven in violation of sec. 1636—47, Stats., does not pre-

clude a recovery for the injuries to the car and the driver, such violation of the law having no causal relation to the accident." (Syllabus, par. 2.) See, also, numerous cases cited in 16 A. L. R. p. 1117, note 3.

We now come to the consideration of the question whether at the time of the accident the relationship of employer and employee existed between the two defendants, or whether the defendant Kastner was an independent contractor. On the 31st day of July, 1923, the account upon the books of the defendant *Breitbach* with Kastner was closed. Kastner evidently had overdrawn his account, and in order to balance the same a voluntary credit was entered upon the books at that time. Kastner thereafter engaged in truck farming, but on rare occasions, when time permitted, he endeavored to effect sales of automobiles. He owned his own car, and used it in drumming up and exploiting prospects. In the course of his efforts he learned that Miller was in the market for a car and desired to effect an exchange. On the 26th of October, 1923, he drove Miller to the *Breitbach* garage at West Allis, and at that time Miller became interested in a certain Hudson car in the garage which was then in process of being repaired. Both Kastner and Miller waited at the garage for about two hours for *Breitbach* to appear, in order that terms might be agreed upon for the proposed exchange. *Breitbach* did not put in an appearance, and Kastner thereupon drove Miller to the latter's home, then proceeded to his own home, and thereafter, evidently while driving over to the West Allis garage of the defendant *Breitbach,* had the accident herein complained of.

The record is devoid of any evidence indicating that *Breitbach* either exercised any control over the activities or movements of Kastner, or that he directed him at any time with respect to the details of his work, or that he had authority so to do. On the contrary, the bold fact is outstanding that

Kastner pursued his operations entirely in accordance with his own volition, and that he drove when he pleased and where he pleased, to suit his own purpose, in a car owned by himself.

The distinction between the ordinary relationship of employer and employee where the rule of *respondeat superior* obtains, and that of an independent contractor, has been repeatedly defined by this court, and nowhere is the distinction more clearly made manifest than in the recent case of *James v. Tobin-Sutton Co.* 182 Wis. 36, 195 N. W. 848. The facts in the *James Case* are very similar to those involved in the instant case. In that case this court approves of the following language, taken from a note in 19 A. L. R. pages 226 to 276: "An independent contractor is a person employed to perform work on the terms that he is to be free from the control of the employer as respects the manner in which the details of the work are to be executed."

Applying this definition of an independent contractor, we are constrained to hold that the evidence in this case clearly establishes the fact that Kastner at the time of the accident was an independent contractor; that he was not subject to any directions as to the details of his work by the defendant *Breitbach;* and that the lower court properly dismissed the action against the latter.

At the close of the evidence a motion was made by counsel for *Breitbach* for the direction of a verdict in his favor. This clearly raised the issue as to whether or not there was any credible evidence in the case to sustain plaintiff's contention that the relationship between *Breitbach* and Kastner was that of employer and employee. The special verdict submitted on this subject clearly submitted to the jury the issues of whether such relationship existed and whether the defendant Kastner at the time of the accident was operating his automobile within the scope of his employment. The learned trial court in his opinion took the position that he

did not submit to the jury the question of whether or not Kastner was an independent contractor and whether he was subject to any detailed directions on the part of *Breitbach.* Viewing the first three questions of the special verdict, we are convinced that the lower court was mistaken in its view, and that judgment could not properly have been ordered in favor of the defendant *Breitbach,* notwithstanding the verdict. However, the evidence discloses that Kastner as a matter of law was an independent contractor, and that therefore the motion of counsel for the defendant *Breitbach* for a direction of the verdict should have been granted.

*By the Court.*—The judgment of the lower court is affirmed.

The appellant moved for a rehearing.

In support of the motion there was a brief by *Walter Schinz, Jr.,* and *Glicksman & Gold,* attorneys, and *Robert Wild,* of counsel, all of Milwaukee.

In opposition thereto there was a brief by *Shaw, Muskat & Sullivan* of Milwaukee.

The motion was denied, with $25 costs, on June 20, 1927.